IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CARMEN RIVERA, Administratrix    )
  of the Estate of    )    Civil Action
  Alphie Herrera, Deceased,    )    No. 13-cv-04748
                             )
         Plaintiff    )
                             )
      vs.    )
                             )
LEHIGH COUNTY; and    )
JOHN DOES 1-10,    )
  (Certain Unidentified Lehigh    )
  County Prison Corrections    )
  Officers);    )
                             )
        Defendants    )

\*    \*    \*

CARMEN RIVERA,    )
  Administratrix    )
  of the Estate of    )    Civil Action
  Alphie Herrera, Deceased,    )    No. 14-cv-03883
                             )
         Plaintiff    )
                             )
      vs.    )
                             )
SGT. JOHN URBAN;    )
C.O. SCOTT REYNOLDS;    )
C.O. ERIC NEWHALL;    )
C.O. MICHAEL DAILEY;    )
C.O. ANGEL RODRIGUEZ; and    )
SGT. CLINE,    )
                             )
        Defendants    )

\*    \*    \*

APPEARANCES:

        JOSEPH P. GUZZARDO, ESQUIRE
        MATTHEW E. GALLAGHER, ESQUIRE
            On behalf of Plaintiff


        DAVID J. MACMAIN, ESQUIRE
        TRICIA M. AMBROSE, ESQUIRE
            On behalf of Defendants


                *    *    *

JAMES KNOLL GARDNER
United States District Judge


## O P I N I O N

      Before the Court for disposition are four motions in limine and two motions for failure to file a reply brief.  Plaintiff Administratrix Carmen Rivera filed two motions in limine.  One seeks to preclude evidence concerning drug use by her decedent Alphie Herrera, Sr.  The second seeks to preclude evidence of prior criminal convictions of plaintiff, her deceased husband Alphie Rivera, Sr. and their three sons.  Defendant filed a "motion in opposition" to each of plaintiff's motions in limine.

      Defendant filed two motions in limine.  One seeks to preclude evidence and testimony of the deaths of Lehigh County Prison inmates prior to the subsequent death of plaintiff's decedent while he was an inmate at the prison.  The second defense motion in limine seeks to preclude evidence and testimony concerning training provided to Lehigh County Prison corrections officers after the death of

-2-

plaintiff's decedent.  Plaintiff filed responses in opposition to each of defendants' motions in limine.

Defendants filed a motion for leave to file a reply brief in support of each of defendants' motions in limine.

For the reasons expressed in the within Opinion I deny both of plaintiff's motions in limine, and I grant both of defendants' motions in opposition.  I grant in part and deny in part defendants' motion in limine concerning other inmate deaths.  I deny defendants' motion in limine concerning training.  Finally, I grant each of defendants' motions for leave to file a reply brief, and I considered each of the defense reply briefs attached to those motions.

## BACKGROUND

The within two civil actions have been consolidated for all purposes, including trial.  In one of the cases (13-cv-04748), plaintiff Carmen Rivera ("Carmen"), as Administratrix of the estate of her deceased husband Alphie Herrera, Sr. ("Alphie, Sr."), from whom she was previously divorced in 2005, sued defendant Lehigh County, Pennsylvania.  In the other case (14-cv-03883), plaintiff sued four corrections officers and two corrections Sergeants.[1]

Plaintiff asserts two Federal claims under 42 U.S.C. § 1983 against the corrections officers for excessive force and denial of medical care, and a derivative Monell claim against Lehigh County. Monell v. Department of Social Services of City of New York, 436 U.S. 648, 690, 98 S.Ct. 2018, 2035-36, 56 L.Ed.2d 591 (1978).  Plaintiff also brings state-law claims under Pennsylvania's Wrongful Death Act,

---

[1]     For ease of reference, unless otherwise indicated, the use of the term "corrections officer" or "officers", includes the corrections Sergeants.

42 Pa.C.S.A. § 8301, and Survival Act, 42 Pa.C.S.A. § 8302.  The
beneficiaries of the Pennsylvania state-law actions are Alphie, Sr.'s
three sons: Alphie Herrera, Jr., age twenty-two ("Alphie, Jr."), Jamie
Herrera, age twenty ("Jamie"), and Joseph Herrera, Jamie's twin
brother, age twenty ("Joseph").

While decedent, Alphie, Sr., was an inmate in the Lehigh
County Prison, he experienced a seizure.  A Code Blue Medical
Emergency was announced, and several corrections staff, including the
defendant officers and three non-party medical personnel, employed by
independent contractor PrimeCare, responded.

When the seizure ended, the officers told Alphie, Sr. that
he had a seizure and needed to remain on the floor until medical
personnel could assess him.  Alphie, Sr. attempted to rise and became
combative when the officers told him that he needed to remain on the
floor.  A struggle ensued.

The prisoner allegedly attempted to bite, strike, kick, and
spit on the officers.  In response, the officers used force, including
handcuffs, leg shackles, OC spray, and knee stuns when Alphie, Sr.
allegedly bit two of the officers, and used control techniques, and
additional strikes to the midsection when he attempted to pull away.

After being placed in a restraint chair and spit hood,
Alphie, Sr. continued to resist.  He was examined by the non-party
medical staff and transported in the chair to the prison medical
department.  After arriving in the medical department, Alphie, Sr. was
conscious and allegedly attempted to bite nurses as they treated him.

A short time later he became unresponsive.  Emergency services were called, and he was transferred to Lehigh Valley Hospital.

Upon arrival, Alphie, Sr. was given a CAT scan which showed no injuries.  Treating doctors also noted no trauma.  Alphie, Sr.'s condition deteriorated.  His body became bloated and bruised, following which he died in the hospital around one o'clock p.m. on February 28, 2013, at age 39.

The Coroner's Investigative Report listed the cause of death as "excited delirium associated with seizure disorder during physical restraint."  The examiner believed that there was an underlying medical condition which was exacerbated by the struggle. The seizure and the struggle sped up the medical problem and caused advanced state metabolic acidosis and a rapid breakdown of the tissue.

## DISCUSSION

### Drug Use

According to the exhibits cited in Defendants' Brief in Opposition to Plaintiff's Motion in Limine to Preclude Evidence of Alphie Herrera [Sr.'s] Use of Illegal Drugs, filed August 21, 2015 (Document 39) ("Defendants' Drug Brief"), Alphie, Sr. had a history of heroin addiction and use of cocaine and marijuana.  As a heroin addict he used three bags of heroin a day prior to his most recent incarceration.  He told medical personnel that he used 25-50 bags of heroin a day in 2011.  He spent thousands of dollars on heroin and other drugs.[2]  He was also an alcoholic.

---

[2]        Defendants' Drug Brief, page 6.

At the time of his incarceration, Alphie, Sr. was subject to a detainer warrant for violating parole.  One of the violations was for failure to remain drug free.  He also stated to his medical providers and others that he believed that his seizures were related to his drug use.

Plaintiff seeks to preclude at trial any evidence of the use of illegal drugs by Alphie, Sr. at the time of his death, or at any time prior.  Plaintiff contends that the evidence must be precluded because toxicology reports at the time of Mr. Herrera's death indicate that he did not ingest any illegal substance, and that there is no medical evidence suggesting that the cause of death was related to drug use.  Accordingly, plaintiff contends that such evidence would be irrelevant and unfairly prejudicial.

Defendants concede that Alphie, Sr.'s "long-standing and significant drug use . . . may not be directly relevant to some of the liability issues".[3]  However, defendants argue that the evidence of drug use are "directly relevant and highly probative of the exact damages which plaintiff seeks."[4]  For the following reasons I agree with defendants.

In her first Cause of Action – Wrongful Death – Plaintiff seeks, in part, "the pecuniary value of support, services, society and comfort that decedent would have provided to them had he lived."[5]  Similarly, in her Second Cause of Action – Survival - plaintiff seeks

---

[3]     Defendants' Brief in Opposition to Plaintiff's Motion in Limine to Preclude Evidence of Alphie Herrera's Use of Illegal Drugs, filed August 21, 2015 (Document 39) at page 1.

[4]     Id.

[5]     See Amended Complaint I, 13-cv-4748 (Document 17), at paragraph 41.

damages for "the net amount of money decedent would have earned between the date of his death and today and the net amount of money decedent would have earned between today and the end of his life expectancy."[6]

If, as defendants suggest, plaintiff will attempt to portray Alphie, Sr. as a family man who provided guidance, society and financial support to his three adult sons but the court precludes defendant from attempting to establish decedent's extensive drug history, it would present the jury with an incomplete picture of Alphie, Sr.

Plaintiff is free to argue that he was going to be different this time and was going to get his life on track. A jury can believe this argument and project a sunnier future for him than his past life had been. However, to eliminate this portion of Mr. Herrera's past could mislead the jury and deprive them of relevant evidence in which to fairly assess damages.

At the time of his present incarceration Alphie, Sr.'s drug addiction was so pronounced that he was using three bags of heroin per day. His financial situation was such that he resorted to shoplifting diapers and is relevant to compute Mr. Herrera's lost future earnings. I agree with defendants that "[t]he future job prospects for a long-time heroin addict who has had convictions for aiding, robbery and other thefts, was homeless, and attempted suicide twice a year prior

---

[6]        Id. at paragraph 45.

to his death is quite different than the sanitized version of Herrera that plaintiff seeks to present.[7]

Defendants also argue that "Plaintiff cannot try [to] present and portray Herrera as a good and dependable source of society, guidance and support to his adult sons to a jury, and preclude defendants from presenting – and a jury from hearing – the life that Herrera actually led.[8]  This is relevant to the issue of damages.

Further, such evidence is not unfairly prejudicial simply because it harms a party's case.  Federal Rule of Evidence 403 requires that any danger of prejudice must substantially outweigh the probative value of the evidence.  I conclude that it does not.

For all of the foregoing reasons I deny Plaintiff's Motion in Limine to Preclude Evidence Concerning Alphie Herrera's Drug Use, and I grant Defendants' Motion in Opposition to Plaintiff's Motion in Limine to Preclude Evidence Concerning Alphie Herrera's Drug Use.

## Criminal Record

According to their respective deposition testimony, Alphie, Sr.'s former wife and three sons have prior arrests and convictions for criminal offenses: Carmen Rivera was convicted of possession of a prohibited weapon, specifically a taser, in 2013.

Alphie Herrera, Jr. was convicted of recklessly endangering another person at age eighteen and received a sentence of eighteen

---

[7]     Defendants' Motion in Opposition to Plaintiff's Motion In Limine to Preclude Evidence of Alphie Herrera's Use of Illegal Drugs filed August 21, 2015 (Document 39) at page 5.

[8]     Id. at page 6.

months probation.  In 2014 he was convicted of possession of a controlled substance for which he was incarcerated five months.  On March 5, 2015 he pled guilty to Tampering with evidence, 18 Pa.C.S.A. § 4910(1), and was sentenced to eighteen months probation.

Jamie Herrera is incarcerated for possession of a controlled substance with intent to deliver.

Joseph Herrera was arrested at age sixteen for retail theft.  The charges were dropped, and he was not convicted.  He was also arrested at age eighteen for underage drinking while driving.  At the time the motion in limine was filed, this charge was still pending.

Alphie Herrera, Sr. was incarcerated on drug charges and he had a history of heroin addiction and cocaine use.  He was incarcerated for drug offenses on three occasions, in 1992, 2002, and 2003. An inmate told Corrections Officer Rodriguez that Alphie, Sr. had some "dusted bud".  Alphie, Sr. spent a substantial number of his adult years in prison for crimes of violence and theft and was under investigation for shoplifting boxes of diapers in December 2012 one month prior to his incarceration.

In Plaintiff's Motion in Limine to Preclude Evidence Concerning Prior Criminal Convictions/Bad Acts plaintiff seeks to preclude at trial all evidence concerning arrests and convictions of Alphie, Sr.'s beneficiaries, Carmen, Alphie, Jr., Joseph and Jamie. Defendants contend that Alphie Herrera, Jr.'s conviction for Tampering with evidence must be admitted pursuant to Federal Rule of Evidence 609(a)(2) as impeachment evidence.

-9-

Plaintiff contends that Alphie, Jr.'s crimes have nothing to do with dishonesty "and therefore carry little probative value, if any to his reliability."[9]  Defendants argue that all of the remaining convictions of the beneficiaries Carmen, Alphie, Jr., Jamie and Joseph are relevant and admissible on the issue of damages.

Plaintiff argues that (1) Carmen's prior conviction of possession of a taser is not a crime of dishonesty; (2) Joseph was not convicted for retail theft, and his underage drinking charge is still pending; (3) Jamie's conviction for possession of a controlled substance with intent to deliver does not involve dishonesty; and (4) the prejudicial effect to plaintiff's case of introducing the criminal records substantially outweighs any probative value in admitting evidence.

Federal Rule of Evidence 609 states, in part, as follows:

> **(a) In General**. The following rules apply to attacking a witness's character for truthfulness by evidence of a criminal conviction:
>
> > **(1)** for a crime that, in the convicting jurisdiction, was punishable by . . . imprisonment for more than one year, the evidence:
> >
> > > **(A)** must be admitted, subject to Rule 403, in a civil case . . . ;
> >
> > **(2)** for any crime regardless of the punishment, the evidence must be admitted if the court can readily determine that establishing the elements of the crime required proving — or the witness's admitting — a dishonest act or false statement.

---

[9]     Plaintiff's Motion In Limine to Preclude Evidence Concerning Prior Criminal Convictions / Bad Acts filed September 1, 2015 in 14-cv-03883 (Document 40) at pages 6 and 7.

Under Pennsylvania law Tampering with evidence is defined as:

> A person commits a misdemeanor of the second degree if, believing that an official proceeding or investigation is pending or about to be instituted, he:
>
> > (1) alters, destroys, conceals or removes any record, document or thing with intent to impair its verity or availability in such proceeding or investigation; or
> >
> > (2) makes, presents or uses any record, document or thing knowing it to be false and with intent to mislead a public servant who is or may be engaged in such proceeding or investigation.

18 Pa C.S.A § 4910.

Tampering with evidence is considered a crime of crimen falsi under Pennsylvania law because it "is an attempt to obstruct justice and inherently involves dishonesty . . . ." Bolus v. Fisher, 785 A.2d 174, 178 (Pa. Cmwlth. 2001).

Federal Rule of Evidence 609(a)(2) states that such convictions must be admitted.  Further, plaintiff agrees that convictions admissible under Rule 609(a)(2) are not subject to the Federal Rule of Evidence 403 balancing test.

Other than Alphie Herrera, Jr.'s conviction for Tampering with evidence, defendants are not seeking to introduce any of the prior convictions of any of the beneficiaries in connection with the liability aspects of the case.  However, defendants argue that all of the convictions of all of the beneficiaries should be admitted as relevant to plaintiff's alleged damages, in particular, damages for

-11-

the loss of Alphie, Sr.'s guidance, teaching, training, advice, education, care, emotional support and moral upbringing.

I agree with defendants that, concerning damages, the jury will be asked by plaintiff to assess and project how the loss of their father and husband will effect their further loss of Alphie, Sr.'s guidance, teaching, training, advice, education, care, emotional support and moral upbringing without allowing the jury to hear of what such direction and guidance wrought while Alphie, Sr. was alive and in their life.[10]

Should the beneficiaries' criminal histories be precluded, the jury will be required to assess a dollar value for the loss of their father's and husband's 's guidance, teaching, training, advice, education, care, emotional support and moral upbringing without the benefit of their actual circumstances and choices made before and after Alphie, Sr.'s death.

In addition, the analysis for denying Plaintiff's Motion in Limine to Preclude Evidence of Alphie Herrera's Use of Illegal Drugs is equally applicable to the reasons for denying preclusion of evidence of the prior criminal records.  Accordingly, I incorporate that discussion here.

For all of the foregoing reasons I deny Plaintiff's Motion in Limine to Preclude Evidence Concerning Prior Criminal Convictions/Bad Acts, and I grant Defendants' Motion in Opposition to

---

[10]     Defendants' Motion in Opposition to Plaintiff's Motion in Limine to Preclude Evidence Concerning Prior Criminal Convictions/Bad Acts, filed in 14-cv-03883 on September 8, 2015 (Document 43) at page 5.

Plaintiff's Motion in Limine to Preclude Evidence Concerning Prior Criminal Convictions/Bad Acts.

### Prior Inmate Deaths

Defendants' Motion in Limine to Preclude Evidence and Testimony of Other Inmate Deaths and Suits Involving Lehigh County Jail was filed September 8, 2015.  Plaintiff's response in opposition was filed September 22, 2015.

Plaintiff contends that the death of Lehigh County Prison inmate David Campbell on October 29, 2011, over a year prior to Alphie, Sr.'s death, is similar to Herrera's death and should have put Lehigh County Prison on notice that its officers were not properly trained concerning use of force on a medically compromised inmate. Plaintiff alleges that Mr. Campbell was non-responsive in his cell to officer's questions, that he was stripped and placed on suicide watch, handcuffed, sprayed with pepper spray, struck, restrained face down on the floor, placed in a restraint chair, and subsequently died.

Defendants contend that the deaths of other inmates at the Lehigh County Prison are irrelevant to the question of whether excessive force was used on Alphie, Sr., or whether he was denied adequate medical treatment.  They contend that while there have been other inmates who died while incarcerated at Lehigh County Prison, no prior inmate deaths at the prison occurred after a seizure incident.

For example, defendants contend that the death of inmate Travis Magditch on January 4-5, 2015 while he slept was caused by an

apparent asthma attack.[11]  They also contend that the death of inmate

Joan Samuels was caused by sickle cell anemia.[12]

      I agree with defendants that the prior deaths of inmates

Travis Magditch, who died in his sleep from an apparent asthma attack,

and Joan Samuels who suffered from sickle cell anemia have no

probative value or relevance as defined in Federal Rules of Evidence

401 and 402 when compared to the death of Alphie Herrera, Sr. who died

after use of force and application of restraints upon entering the

postictal phase following a seizure.

      On the other hand, I agree with plaintiff that David

Campbell's death is similar to Alphie, Sr.'s death and should have put

defendant Lehigh County on notice that its prison officers were not

properly trained with respect to use of force on a medically

compromised inmate.  There were numerous similarities in the

circumstances surrounding the inmate deaths of David Campbell and

Alphie Herrera, Sr. approximately one year later.

      Like Herrera, a corrections officer was called by Mr.

Campbell's cellmate to come to the cell.  Like Herrera, Mr. Campbell

did not respond to the correction officer's questions.  Responding

medical staff failed to conduct a medical exam of Mr. Campbell, but

instead ordered that he be stripped naked and placed on suicide watch.

      Like Herrera, the corrections officers handcuffed Mr.

Campbell.  As with Herrera, the responding corrections officers

---

[11]    See Magditch v. Lehigh County and PrimeCare Medical, Inc., et al., Lehigh
County Court of Common Pleas, No. 2012-C-5428 (2015).

[12]    See Joan Samuels v. Lehigh County and PrimeCare Medical Inc., et al.,
Lehigh County Court of Common Pleas, No. 2012-C-131 (2013).

proceeded to restrain Mr. Campbell and sprayed him with pepper spray. When Mr. Campbell attempted to stand up, he was restrained face down on the floor, in the same manner as Herrera.

Like Herrera, Mr. Campbell's legs and arms were shackled, and multiple knee strikes were delivered to his back.  A corrections officer requested permission to continue Mr. Campbell's restraint by placing him in a restraint chair, like Herrera.  Like Herrera, Mr. Campbell subsequently died.

Defendant officers' response to the David Campbell incident should have put defendant Lehigh County on notice that its corrections officers needed specific training with respect to use of force on a medically compromised inmate who is incapable of responding to verbal communication.  Both David Campbell's and Alphie Herrera, Sr.'s deaths are a predictable consequence of defendant's alleged failure to train its staff to refrain from using force on a prisoner who is medically compromised and therefore unable to follow commands.

Accordingly, the David Campbell incident is probative of the issues before the jury as defined in Federal Rules of Evidence 401 and 402.

For the reasons expressed above, I grant in part and deny in part Defendants' Motion in Limine to Preclude Evidence and Testimony of Other Inmate Deaths and Suits Involving Lehigh County Jail.

### Post-Incident Training

Defendants filed a motion in limine to preclude evidence and testimony concerning training provided to prison staff after

February 27, 2013, the date of this incident.  Defendants argue that evidence of post-incident training provided by non-party PrimeCare regarding medical and correctional responses to seizures should be precluded.  First, defendants argue that such material is precluded under Rule 407 of the Federal Rules of Evidence as a subsequent remedial measure.  Second, they argue that post-incident training by a non-party is not relevant to the claims against the defendant officers or the Lehigh County Prison.

Plaintiff argues that the defendants' motion in limine to preclude a non-party's remedial measure must be denied because Rule 407 does not prohibit the admission of remedial measures taken by non-parties.  Plaintiff also argues that seizure training after Alphie, Sr.'s death is relevant.

Plaintiff maintains that Lehigh County Prison failed to properly train its correctional staff with respect to use of force on a known medically compromised inmate, and this failure led to Alphie, Sr.'s death.

According to the deposition testimony of defendant correctional sergeant John Urban, seizures occur on a daily basis at the Lehigh County Prison, and sometimes more, and that this has persisted for many years.[13]  At the time of Alphie, Sr.'s death defendant Lehigh County Prison's Code Blue policy required corrections officers to render first aid and assist medical staff in the provision of appropriate medical care.  However, the policy was silent with respect to the use of force on a medically compromised inmate.

---

[13]    Urban deposition, page 19, line 20.

-16-

After Alphie, Sr.'s death, defendant prison's private third-party medical provider, PrimeCare, L.L.C., created a specific training program for corrections officers to reinforce that one should not restrain, strike or pepper spray an inmate having a seizure. Specifically, PrimeCare instructed the officers, among other things, that:

> Following a seizure (postictal phase) may last up to several hours.  Patients may become fearful, confused, disoriented, and belligerent or aggressive, especially when approached or threatened – restraint of persons soon after a seizure may exacerbate [or] precipitate combativeness.  Some seizures cloud awareness, block normal communication and produce a variety of undirected, involuntary and unorganized movements that may be erroneously viewed as aggression . . . . Patients should not be forcibly restrained during or after a seizure.  Patients suffering from postictal delirium should not have pressure applied to [their] abdomen or be placed on their stomach.[14]

Rule 407 of the Federal Rules of Evidence states, in relevant part:

> When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove:
> - Negligence;
> - Culpable conduct;
> - A defect in a product or its design; or
> - A need for a warning or instruction.

Citing this rule, defendants seek to preclude training that was prepared and instituted by non-party professional corporation, PrimeCare, L.L.C.  There is no basis in law to preclude measures taken by a non-party.  Diehl v. Blaw-Knox, 360 F.3d 426, 430 (3d Cir. 2004).

---

[14]     Defendants' Seizure Training Power Point Presentation.

Rule 407 rests on the strong public policy of
encouraging manufacturers to "make improvements for
greater safety." Stecyk, 295 F.3d at 415 (quoting
Kelly v. Crown Equipment Co., 970 F.2d 1273, 1276 (3d
Cir. 1992) . . . .

This policy is not implicated where the evidence
concerns remedial measures taken by an individual or
entity that is not a party to the lawsuit.  The
admission of remedial measures by a non-party
necessarily will not expose that non-party to
liability, and therefore will not discourage the non-
party from taking the remedial measures in the first
place.  It is noteworthy that each of the circuits to
address this issue has concluded that Rule 407 does
not apply to subsequent remedial measures taken by a
non-party.  E.g., Mehojah v. Drummond, 56 F.3d 1213,
1215 (10th Cir. 1995); TLT-Babcock, Inc. v. Emerson
Elec. Co., 33 F.3d 397, 400 (4th Cir. 1994); Raymond v.
Raymond Corp., 938 F.2d 1518, 1523-24 (1st Cir. 1991);
Pav. V. Yosemite Park & Curry Co., 928 F.2d 880, 888
(9th Cir. 1991); O'Dell v. Hercules, Inc.,
904 F.2d 1194, 1204 (8th Cir. 1990); Dixon v. Int'l
Harvester Co., 754 F.2d 573, 583 (5th Cir. 1985); Lolie
v. Ohio Brass Co., 502 F.2d 741, 744 (7th Cir. 1974)
(per curiam).  See generally 2 Weinstein's Federal
Evidence § 407.05[2] (Joseph M. McLaughlin ed., 2d ed.
2003).

Diehl v. Blaw-Knox, at 429-430.

Defendants argue that any information or training not

available or provided to the officers prior to the incident is

irrelevant to whether the officers used excessive force or whether

they or the County were deliberately indifferent to any serious

medical need of Alphie, Sr.

As noted above, plaintiff maintains that defendant prison

failed to properly train its correctional staff with respect to use of

force on a known medically compromised inmate, and that this failure

led to Alphie, Sr.'s death.  The relevant law concerning this theory

of liability states, "A violation of federal rights may be a highly

predictable consequence of a failure to equip law enforcement officers

-18-

with specific tools to handle during recurring situations." Berg v. City of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000), citing Board of the County Commissioners of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 408, 409, 117 S.Ct. 1382, 1390, 137 L.Ed.2d (1997).

        The likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights could justify a finding that the policymaker's decision not to train the officer reflected deliberate indifference to the consequences of the policymaker's choice.

        Here defendant County's Code Blue Medical Emergency policy was silent with respect to use of force on a medically compromised individual.  This despite the admission that seizures occur at the prison on a daily basis.  Accordingly, it is relevant that an independent non-party, PrimeCare, L.L.C., with whom defendant contracted for medical services, determined that defendant officers' training was deficient in this area.

        For all the foregoing reasons, Defendants' Motion in Limine to Preclude Evidence and Testimony as to Training Provided After February 27, 2013 is denied.

### Reply Briefs

        Defendants filed two motions, each titled Motion for Leave to File a Reply Brief.  The first such motion was filed September 24, 2015 as Document 66 in case number 14-cv-03883 together with the proposed reply brief.  The second was filed September 29, 2015 as Document 68 in case number 14-cv-03883 together with a copy of

the proposed reply brief.  Each motion was unopposed.  In the Order
accompanying this Opinion, I have granted each motion; and I have
considered both reply briefs in my analysis of those matters.

### CONCLUSION

For all the foregoing reasons, I deny plaintiff's motion in
limine concerning Alphie Herrera, Sr.'s drug use, and allow evidence
and testimony concerning it only in the damages phase of this
bifurcated trial.  I grant defendants' motion in limine in opposition
to it.

I deny plaintiff's motion in limine concerning prior
criminal convictions, and allow evidence and testimony concerning such
convictions consistent with this Opinion, only in the damages phase of
this bifurcated trial.  I grant defendants' motion in limine in
opposition to it.

I grant in part and deny in part defendants' motion in
limine concerning other inmate deaths.  I allow evidence and testimony
concerning the prior death of inmate David Campbell in both the
liability and damages phases of this bifurcated trial.  I disallow
evidence and testimony of the prior deaths of inmates Travis Magditch
and Joan Samuels.

I deny defendants' motion in limine concerning training
provided by the prison subsequent to this incident, and allow evidence
and testimony concerning such training provided to prison staff by
defendant Lehigh County in both the liability and damages phases of
this bifurcated trial.

Finally, I grant defendants' two motions to file reply briefs.